IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| ESTATE OF DANIEL KEITH ROSS, | CV 22–26–BU–DLC |
| Plaintiff, | |
| vs. | ORDER |
| GALLATIN COUNTY and JOHN DOES 5-10, | |
| Defendants. | |

This matter comes before the Court on Defendants Gallatin County, Jimmy R. Biggs, and Abram Evans's (collectively "Defendants") Motion for Partial Summary Judgment (Doc. 79) and Plaintiff Estate of Daniel Keith Ross's ("Plaintiff" or "the Estate") Motion to Strike Portion of Declaration of Abram Evans (Doc. 96). Defendants seek to dismiss the Estate's claims against Officer Biggs and Sergeant Evans in their entirety and to dismiss the *Monell* claim against Gallatin County (the "County"). (*Id.* at 1–2.) Defendants further seek to dismiss any request for punitive damages. (*Id.* at 2.) For the reasons herein, both the Motion for Partial Summary Judgment and the Motion to Strike will be granted.

1

# BACKGROUND[1]

On March 5, 2019, Daniel Keith Ross was arrested and taken into custody at the Gallatin County Detention Center ("GCDC") following a probation violation arising from a positive test for a banned substance. During his intake screening on March 5, 2019, Ross answered "No" to all Suicide Risk Questions. Thereafter, on March 13, 2019, Ross requested to speak with a mental health professional. Officer Biggs received the request and immediately connected Ross with Clayleen Pipinich, a mental health professional with Western Montana Mental Health Center ("WMMHC"). Ross relayed to Pipinich that he was "going through a lot of stress and deep depression." Pipinich asked whether Ross had a plan to harm himself and Ross denied, stating that he "knows his moments of depression will pass based on life experience" and he "wouldn't do something like that."

Ross later made a phone call to his ex-wife, Mary Poucher, stating that he had spoken with a mental health provider but that he had also tied a sheet around his table in his cell and tied it around his neck "just to see if it would work." Ross told Poucher that he "didn't tell [Pipinich] that part." Poucher did not notify GCDC staff that Ross had made these comments. Later on March 13, per protocol, all inmates were placed in "lockdown" status over the 12:30 p.m. to 1:30 p.m. lunch

---

[1] The following facts are taken primarily from Plaintiff's response to Defendants' Statement of Undisputed Facts and are deemed undisputed unless otherwise noted. (*See* Doc. 95.)

hour; at approximately 12:57 p.m., Ross called Officer Biggs and asked to speak with mental health again. Officer Biggs informed Ross they were at lunch but that he would contact them on Ross's behalf. At 1:17 p.m. Officer Biggs conducted his rounds and discovered Ross unresponsive in his cell with a sheet tied around his neck. Ross was transported to a local hospital where he ultimately died on April 4, 2019.

The Estate brought this action against Gallatin County, Officer Biggs, and Sergeant Evans on April 1, 2022. (Doc. 1.) The Estate filed a second amended complaint on April 24, 2023, alleging a 42 U.S.C. § 1983 claim against Officer Biggs and Sergeant Evans (Count I), a claim for negligence against the County, Officer Biggs, and Sergeant Evans (Count II), a *Monell* claim against the County (Count III), and wrongful death and survivorship against all Defendants (Count IV). (*See* Doc. 21.) The amended complaint sought an award of compensatory damages, punitive damages, and attorney's fees and costs. (*Id.* at 15.) Defendants now seek summary judgment on all claims brought against Officer Biggs and Sergeant Evans as well as the *Monell* claim against Gallatin County. (Doc. 79 at 1–2.) Defendants further seek to dismiss the Estate's request for punitive damages. (*Id.* at 2.) Additional facts and background will be discussed as necessary to the analysis below.

3

## LEGAL STANDARD

A party is entitled to summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Summary judgment is appropriate where the documentary evidence permits only one conclusion. *Id.* at 251. "The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *N.W. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citations omitted).

The party seeking summary judgment bears the initial burden of identifying the "portions of the pleadings, depositions, answers to interrogatories," admissions, and affidavits that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630–31 (9th Cir. 1987).

DISCUSSION

Defendants' Motion for Partial Summary Judgment seeks dismissal of Count I alleging a Section 1983 claim against Officer Biggs and Sergeant Evans, Count II insofar as it alleges negligence against Sergeant Evans and Officer Biggs, Count III alleging a *Monell* violation against Gallatin County, and Count IV insofar as it alleges wrongful death and survivorship against Officer Biggs and Sergeant Evans. (Doc. 80 at 4.) Defendants further seek dismissal of Plaintiff's request for punitive damages. (*Id.*) In response, Plaintiff concedes that, following discovery and briefing on the Motion for Partial Summary Judgment, Count I should be dismissed as to Sergeant Evans, Count II should be dismissed as to Officer Biggs and Sergeant Evans, Count III should be dismissed in its entirety, and Count IV should be dismissed as to Officer Biggs and Sergent Evans. (Doc. 94 at 1–2, 6.)

Therefore, the only issues that remain on summary judgment are (1) whether Officer Biggs violated Section 1983, as alleged in Count I, and (2) whether Plaintiff's claim for punitive damages must be dismissed. The Court will address each issue in turn.

## I.    Motion for Partial Summary Judgment

### A. Count I – Section 1983

The Estate alleges that Officer Biggs deprived Ross of his constitutional rights protected by the Eighth Amendment and Fourteenth Amendment to the

United States Constitution, including the right to be free from cruel and unusual punishment and to be afforded due process. (Doc. 21 ¶ 26.) As an initial matter, the Court must determine the proper legal standard governing Section 1983 claims brought by a pretrial detainee such as Ross. *See Weishaar v. County of Napa*, 2016 WL 7242122, at *6 (N.D. Cal. Dec. 15, 2016) (Section 1983 claims brought by convicted prisoners arise under the Eighth Amendment, whereas Section 1983 claims brought by pretrial detainees lie with the Fourteenth Amendment).

"Inmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause." *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016) (en banc). Under either clause, the inmate must establish that a prison official acted with "deliberate indifference." *Id.* Relevant here, the Ninth Circuit has "long analyzed claims that correction facility officials violated pretrial detainees' constitutional rights by failing to address their medical needs (including suicide prevention) under a 'deliberate indifference' standard." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1241 (9th Cir. 2010) (citing cases), overruled in part by *Castro v. County of Los Angeles*, 844 F.3d 1060, 1070 (9th Cir. 2016) (en banc).

The parties argue that because a pretrial detainee's rights under the Fourteenth Amendment are comparable to the rights of prisoners under the Eighth

6

Amendment, the Ninth Circuit has applied Eighth Amendment medical care standards to Section 1983 claims brought by pretrial detainees. (Doc. 80 at 5–6 (citing *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998); Doc. 94 at 7–8).) According to the Defendants, deliberate indifference under the Eighth Amendment, and thus also under the Fourteenth Amendment, involves the consideration of two elements: "[1] the seriousness of the prisoner's medical need[;] and [2] the nature of the defendant's response to that need." (Doc. 80 at 5–6 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992)).) Defendants argue this analysis contains both an objective and a subjective component, with "[t]he objective part of the test requir[ing] a showing that the defendants deprived the plaintiff of the minimal civilized measures of life's necessities," and "[t]he subjective part requir[ing] a showing that the defendants acted with deliberate indifference in doing so." (*Id.* at 6 (citing *Grenning v. Miller-Stout*, 739 F.3d 1235, 1238 (9th Cir. 2014).) The Estate agrees with Defendants' recitation of the standard governing its Section 1983 claim. (Doc. 94 at 8.)

It appears, however, that the parties are mistaken. Although the parties correctly understand the historical framework governing a pretrial detainee's Section 1983 claims—specifically that claims brought under the Fourteenth Amendment applied the Eighth Amendment's objective and subjective test— recent authority from the Ninth Circuit dictates that the standard for "deliberate

7

indifference" in fact diverges depending upon whether the claim is brought by a convicted inmate under the Eighth Amendment or a pretrial detainee Fourteenth Amendment.

In *Clouthier*, the Ninth Circuit recognized that a single "deliberate indifference" standard governed Section 1983 claims brought under both the Eighth and Fourteenth Amendments. 591 F.3d at 1242. That standard, according to *Clouthier*, incorporated a subjective analysis. *Id*. Subsequently, however, the Ninth Circuit in *Castro* observed that *Clouthier* was no longer tenable given the Supreme Court's recent decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), which held that courts must use an objective standard when analyzing a pretrial detainee's use-of-force claim. 833 F.3d at 1068–70. *Castro* thus overturned *Clouthier* "to the extent it identified a single deliberate indifference standard for all § 1983 claims[,]" concluding that use-of-force and failure-to-protect claims in the pretrial context apply a purely *objective* standard. *Castro*, 833 F.3d at 1069 (emphasis added).

As a result, following *Castro*, use-of-force and failure-to-protect claims brought by pretrial detainees under the Fourteenth Amendment are to be analyzed under an objective standard; claims brought by prisoners under the Eighth Amendment, however, retain both an objective and subjective analysis. *Castro*, 833 F.3d at 1067–68, 1070–71; *see also Russo-Wood v. Yellowstone County*, 2019

8

WL 1102680 (D. Mont. March 7, 2019) (applying an objective standard to pretrial detainee's deliberate indifference claim arising under the Due Process Clause of the Fourteenth Amendment).

Thereafter, in *Gordon v. County of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018), a case involving a pretrial detainee's in-custody death and the estate's subsequent Section 1983 claim, the Ninth Circuit extended *Castro's* objective analysis to medical care claims brought by pretrial detainees.[2]

As a result of *Castro* and *Gordon*, it is imperative to differentiate between claims brought by pretrial detainees and by prisoners, as that differentiation governs the applicable legal standard. Here, although the Estate's claims are couched under both the Eighth and Fourteenth Amendments (Doc. 21 ¶ 26), it appears the parties understand Ross to be a pretrial detainee. (Docs. 80 at 5; 94 at 7.) The Court agrees. *See Ressy v. King County*, 520 Fed. Appx. 554 (9th Cir. 2013) (treating prisoner held in pre-hearing detention for a probation violation as pretrial detainee). Because Ross is a pretrial detainee, his claims arise under the

---

[2] The Court notes that the district court in *Gordon* applied a similar standard to that advocated by the parties here, specifically that "[t]he test for deliberate indifference is a subjective test in that the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." 2016 WL 11502908, at * 4 (C.D. Cal. June 14, 2016). The district court was reversed due to its application of a subjective standard.

Fourteenth Amendment; accordingly, the Court will apply a purely objective standard to determine whether Officer Biggs acted with "deliberate indifference."

The elements of a pretrial detainee's medical care claim against an individual defendant are: (1) whether "the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;" (2) whether "those conditions put the plaintiff at substantial risk of suffering serious harm;" (3) whether "the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and" (4) whether "by not taking such measures, the defendant caused the plaintiff's injuries." *Gordon*, 888 F.3d at 1125. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." *Id.* (internal quotations and citation omitted). Deliberate indifference is the "conscious or reckless disregard of the consequences of one's acts or omissions. It entails something more than negligence but is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Gantt v. City of Los Angeles*, 717 F.3d 702, 708 (9th Cir. 2013).

With the correct legal standard in mind, the Court now turns to the relevant facts. At the time of Ross's intake screening on or around March 5, 2019, he

10

answered "No" to all Suicide Risk Questions. (Doc. 95 ¶ 4.) When asked if he had any mental health conditions, including bi-polar, PTSD, anxiety, depression, or other, Ross also circled "No." (*Id.*) Thereafter, on March 13, Ross contacted Officer Biggs to request mental health treatment at approximately 11:17 a.m. (*Id.* ¶ 5.) Officer Biggs immediately contacted mental health, and Ross spoke with Pipinich, a mental health professional with WMMHC. (*Id.*) Pipinich reported that "within the last three days [Ross] has been experiencing depression and passive suicidal ideation." (*Id.* ¶ 36 (citing Doc. 80-1 at 41).) Ross denied any plans to harm himself, however, stating that he "knows his moments of depression will pass based on life experience" and that he "wouldn't do something like that." (*Id.*) Ross reported that he thought his depression was "situational," that he was feeling better, and "felt as though he just needed to talk." (*Id.*) Pipinich encouraged Ross to contact "mental health in the future if he is in need of further support/resources." (*Id.* (citing Doc. 80-1 at 41).)

At approximately 11:30 a.m., after meeting with Pipinich, Ross called Poucher via the jail phone system; during that conversation, Ross relayed that he had spoken with mental health but that he had also tied a sheet around the table in his cell and around his neck "just to see if it would work." (*Id.* ¶ 8.) Ross told Poucher that he "didn't tell [Pipinich] that part." (*Id.*) Poucher never relayed these

11

comments to GCDC, and GCDC staff did not listen to Ross's phone calls in real time. (*Id.* ¶¶ 9, 11.)

Per protocol, all inmates residing in Ross's pod were placed in "lockdown" status during the 12:30 p.m. to 1:30 p.m. lunch hour. (*Id.* ¶ 12.) "Lockdown" requires that inmates be placed in their cells and checked on every 30 minutes. (*Id.*) On March 13, Ross was placed in "lockdown" and his cell was visually inspected at 12:37 p.m. (*Id.* ¶¶ 12, 14.) At approximately 12:57 p.m., Ross called the control room and asked Officer Biggs to speak with mental health again. (*Id.* ¶ 13.) Ross stated, "I really need to talk to somebody from mental again or something" and "Ah . . . Just. I don't know what's going on with me." (Doc. 80-1 at 30.) Officer Biggs informed Ross that mental health was at lunch, but he would let them know Ross wanted to speak with them again. (Doc. 95 ¶ 13.) The parties dispute whether, when interviewed about the March 13 events, Officer Biggs reported that Ross sounded "stressed' but never sounded 'distressed,'" (Doc. 80-1 at 27) or whether he reported that Ross sounded "stressed but in distress," (Doc. 80-1 at 39). Without a copy of the audio recording, however, the Court cannot ascertain what Officer Biggs actually reported given this dispute in the record.[3]

---

[3] Defendants argue that the Estate's telling is due to a typographical error in the transcription of Officer Biggs's report; however, without a copy of the audio recording, the Court cannot ascertain which report contains the typographical error.

Thereafter, Officer Biggs began his rounds around 1:17 p.m. and, at approximately 1:18 p.m., discovered Ross kneeling down and leaning forward in his cell with a sheet tied around the desk with the other end around his neck, with his head suspended off the floor. (Doc. 95 ¶ 14–15; Doc. 80-1 at 31.) Though GCDC's lockdown policy requires the visual inspection of inmates every 30 minutes, approximately 41 minutes had elapsed between Officer Biggs's initial inspection and the time he discovered Ross. (Doc. 95 ¶ 14 (citing Doc. 80-1 ¶ 5, 43).)

On the present facts, read in the light most favorable to the Estate, the Court finds that summary judgment is warranted in favor of Officer Biggs. The Court finds the first and third elements dispositive—i.e., whether the defendant made an intentional decision regarding Ross's confinement and whether he did not take reasonable available measures to abate the risks—and finds the Northern District of California's decision in *Weishaar*, 2016 WL 7242122, compelling in this regard. There, the court granted summary judgment in favor of the defendant officer on plaintiff's Section 1983 claim, noting that he was unaware of reports regarding the deceased's suicide risk, and instead only knew that he was "very upset, had mental[]health issues, needed his medication, spent a long time on his phone call, and cried." *Id.* at *8. The court observed that the officer was not responsible for the failure to order a prompt mental health assessment nor was he responsible for the

deceased's housing classification. *Id.* Finally, although safety checks were required every 15 minutes for those on suicide watch, the court determined that the record failed to suggest that leaving for 25 minutes or failing to respond for "at least five minutes" was objectively unreasonable. *Id.*

Here, as in *Weishaar*, although Ross's suicide occurred on Officer Biggs's watch, the record does not indicate that Officer Biggs was responsible for Ross's housing classification nor that was he aware of the suicidal ideation Ross had expressed to Poucher. Rather, like *Weishaar*, Officer Biggs at best knew only of Ross's current mental health concerns, as evidenced by Ross's statement that he "do[esn't] know what's going on with me," and his request to speak to mental health.[4] Moreover, although safety checks were required every 30 minutes, the record does not suggest that failing to check in for 41 minutes was objectively unreasonable. Finally, although Ross expressed passive suicidal ideation to Pipinich, he declined feeling suicidal following their conversation and had indicated on his GCDC intake forms that he was not suicidal. In any event, the record does not suggest that Officer Biggs was made aware of Ross's comments to Pipinich.

_____

[4] The Court notes that the dispute regarding whether Officer Biggs recognized that Ross was "stressed" but not "distressed" or "stressed but in distress" is not material as it does not change the Court's conclusion. Even if Officer Biggs recognized that Ross was "in distress," it was not unreasonable for him to not immediately place Ross on suicide watch or to check his cell in that immediate moment.

The "mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment"; rather, a plaintiff must show something more than negligence, akin to "reckless disregard." *Gordon*, 888 F.3d at 1125 (internal quotations and citation omitted). On the record currently before it, the Court concludes that Officer Biggs's response to Ross's mental health needs—specifically that he would connect Ross with mental health following the lunch hour—was objectively reasonable. Therefore, it was also reasonable for Officer Biggs to not immediately check on Ross or to place him on suicide watch. At best, Officer Biggs exhibited some degree of negligence in not immediately checking on Ross; these actions, however, do not amount to a reckless disregard of Ross's mental health needs.

Even under an Eighth Amendment standard, there is not a triable issue of fact about whether Officer Biggs was subjectively aware of the risk posed to Ross. Ross's intake notes did not indicate that he was at risk of suicide, nor did Ross ever communicate his suicidal ideation to Officer Biggs. In reviewing the circumstantial evidence, the Court concludes that a jury could not reasonably infer that Officer Biggs knew of Ross's suicidal condition, his need for immediate mental health treatment, and "the risk of harm that he faced if denied medical attention." *Lolli v. County of Orange*, 351 F.3d 410, 421 (9th Cir. 2003); *see also Farmer v. Brennan*, 511 U.S. 825, 842 (1994) ("Whether a prison official had the requisite knowledge

15

of a substantial risk is a question of fact subject to demonstrate in the usual ways, including inference from circumstantial evidence, . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."). Similarly, a jury could not reasonably infer that Officer Biggs consciously disregarded this risk; indeed, Officer Biggs immediately connected Ross with mental health upon his initial request, and informed Ross that he would make the second connection following the lunch hour. *C.f. Lolli*, 351 F.3d at 421.

### B. Count I - Qualified Immunity

Qualified immunity shields federal and state officials from civil liability under Section 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity is an immunity from suit rather than a mere defense to liability. Thus, [w]here the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Conner v. Heiman*, 672 F.3d 1126, 1130 (9th Cir. 2012) (internal citations and emphasis omitted).

"To determine whether an officer is entitled to qualified immunity, a court must evaluate two independent questions: (1) whether the officer's conduct violated a constitutional right, and (2) whether that right was clearly established at

16

the time of the incident." *Castro*, 833 F.3d at 1066. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation marks and citation omitted). The plaintiff bears the burden of proving the existence of a clearly established right at the time of the alleged misconduct. *Maraziti v. First Interstate Bank*, 953 F.2d 520, 523 (9th Cir. 1992). The question is "whether it would have been clear to a reasonable officer in [the officer's] position[] that his conduct was unlawful in the situation he was confronted with." *Russo-Wood*, 2019 WL 1102680, at *12 (citing *Mullenix*, 577 U.S. at 11).

The Estate has not cited to, and the Court is unaware of, any case holding that there is a clearly established constitutional right to suicide intervention when the detainee was not exhibiting a specific suicide risk and disclaimed being suicidal; without more, Ross's lunch-hour request to speak with mental health is insufficient to alert a reasonable officer in Officer Biggs's position that he was actively contemplating suicide. Though the Estate directs the Court to several cases, those cases all pertain to situations where the deceased had a known history of suicidal behavior, expressed thoughts of suicide to detention center or prison staff, or expressed signs of mental illness such as hearing voices and experiencing major mood changes. *See Clouthier*, 591 F.3d 1232; *Conn v. City of Reno*, 591

17

F.3d 1081 (9th Cir. 2010); *Atayde v. Napa State Hosp.*, 2017 WL 2289351 (E.D. Cal. May 25, 2017); *Campos v. County. of Kern*, 2017 WL 915294 (E.D. Cal. March 7, 2017); *Weishaar v. County of Napa*, 2016 WL 7242122 (N.D. Cal. Dec. 15, 2016). That is not the situation here.

Based upon the circumstances presented to Officer Biggs, the Court finds the Estate has failed to establish that Officer Biggs was required to immediately check on Ross or to place him on suicide watch. Accordingly, the Court finds that Officer Biggs is entitled to qualified immunity and summary judgment is further granted in his favor on these grounds.

### C. Punitive Damages

Defendants next argue that, in the event all causes of action against Officer Biggs and Sergeant Evans fail, there can be no request for punitive damages. (Doc. 80 at 17.) The Court agrees. The Estate argues that although Montana Code Annotated § 2-9-105 provides that governmental entities are immune from exemplary and punitive damages, this restriction is not applicable to a Section 1983 action. (Doc. 94 at 14.) However, because the Section 1983 count will be dismissed—relieving Officer Biggs from this suit entirely— there remains no viable cause of action through which the Estate may recover punitive damages. Indeed, the Estate provides no other colorable basis for which it may recover

punitive damages against the County. Accordingly, the Court finds that the Estate's claim for punitive damages must be dismissed.

## II.    Motion to Strike

As a final matter, the Estate seeks to strike paragraphs 11 and 12 of the Declaration of Sergeant Evans. (Doc. 96 at 1.) In the disputed paragraphs, Sergeant Evans states that he and Officer Biggs "did not engage in any deliberate indifference to Ross's needs." (Doc. 80-1 at 44, ¶¶ 11–12.) In response, Defendants argue the Estate's motion is moot because Sergeant Evans will be dismissed from this case. (Doc. 100 at 1–2.)

"Instructing the jury as to the applicable law is the distinct and exclusive province of the court." *Nationwide Transp. Fin. v. Cass Info. Sys.*, 523 F.3d 1051, 1058 (9th Cir. 2008) (citation omitted). A lay witness may not testify as to a legal conclusion. *United States v. Crawford*, 239 F.3d 1086, 1090 (9th Cir. 2001). Here, Sergeant Evans's declaration testifies as to an ultimate issue in this case: whether he and Officer Biggs exhibited deliberate indifference to Ross's need for mental health treatment. Such a determination is reserved for the trier of fact. *See Crawford*, 239 F.3d at 1090. Although both Sergeant Evans and Officer Biggs will be dismissed from this matter, the testimony is an improper legal conclusion and will be stricken.

## CONCLUSION

Accordingly, for the reasons stated above,

IT IS ORDERED that the Motion for Partial Summary Judgment (Doc. 79) is GRANTED as follows:

1. Count I is DISMISSED in its entirety;

2. Count II is DISMISSED as it relates to Officer Biggs and Sergeant Evans. Count II shall proceed to trial against Gallatin County;

3. Count III is DISMISSED in its entirety;

4. Count IV is DISMISSED as it relates to Officer Biggs and Sergeant Evans. Count IV shall proceed to trial against Gallatin County; and

5. Plaintiff's request for punitive damages is DISMISSED.

IT IS FURTHER ORDERED that the Motion to Strike (Doc. 96) is GRANTED.

IT IS FURTHER ORDERED that the case caption shall be amended as reflected above.

DATED this 6th day of January, 2026.

Dana L. Christensen, District Judge
United States District Court

20