IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| ESTATE OF DANIEL KEITH ROSS,<br><br>Plaintiff,<br><br>vs.<br><br>GALLATIN COUNTY and JOHN DOES 5-10,<br><br>Defendants. | CV 22–26–BU–DLC<br><br><br>ORDER |

This matter comes before the Court on Defendant Gallatin County's First Motion in Limine (Doc. 65), Plaintiff's Motions in Limine (Doc. 70), and Plaintiff's Motion to Strike Defendant's Untimely Amended Liability Expert Disclosure (Doc. 102). For the reasons discussed below, Defendant's First Motion in Limine (Doc. 65) will be denied, Plaintiff's Motions in Limine (Doc. 70) will be granted in part and denied in part, and Plaintiff's Motion to Strike (Doc. 102) will be denied.

### BACKGROUND

As the Court and the parties are aware, this case arises from Daniel Keith Ross's suicide attempt on or around March 13, 2019, while incarcerated in the Gallatin County Detention Center ("GCDC"). Following his attempt, Ross was transported to a local hospital where he ultimately died on April 4, 2019. Ross is

1

survived by one daughter, K.R. The Estate of Daniel Keith Ross (the "Estate") filed this action on April 1, 2022, alleging several claims against Gallatin County and several other defendants who have since been dismissed, including Western Montana Mental Health Center ("WMMHC") and WMMHC employee Clayleen Pipinich. Following the Court's January 6, 2026, ruling on Defendant's Motion for Partial Summary Judgment, only two claims remain: Count II against Gallatin County for negligence and Count IV against Gallatin County for wrongful death and survivorship. (*See* Doc. 106.) This matter is set for trial on February 17, 2026. Further background information may be found in the Court's Order on Defendant's Motion for Partial Summary Judgment. (*Id.*)

## LEGAL STANDARD

"Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002). "In the case of a jury trial, a court's ruling 'at the outset' gives counsel advance notice of the scope of certain evidence so that admissibility is settled before attempted use of the evidence before the jury." *United States v. Heller*, 551 F.3d 1108, 111–12 (9th Cir. 2009). A district court has discretion in ruling on a motion in limine. *United States v. Ravel*, 930 F.2d 721, 726 (9th Cir. 1991).

2

## DISCUSSION

**I. Defendant's First Motion in Limine (Doc. 65)**

The Estate has identified 53 "Non-Retained/Hybrid Witnesses" that it may call to illicit testimony on various aspects of K.R.'s mental health treatment. (*See* Doc. 58-3.) Defendant seeks to limit the testimony of these witnesses to the care, treatment, and prognosis of Ross's daughter, K.R., and to preclude any testimony as to causation, specifically that K.R.'s emotional distress was caused in whole or in part by her father's death. (Doc. 66 at 2.) Defendant argues that Plaintiff's disclosure of the hybrid experts fails to satisfy the disclosure requirements of the Court's Scheduling Order (Doc. 54) and Federal Rule of Civil Procedure 26(a)(2)(C). (Doc. 66 at 3.) Defendant contends that that any causation opinion must have been disclosed pursuant to Rule 26(a)(2)(B) and subject to a complete expert report prepared in conformance with that rule. (*Id.* at 7.) The Court disagrees.

Rule 26(a)(2)(B) requires that the disclosure of expert testimony be accompanied by a written report when "the witness is one retained or specifically employed to provide expert testimony in the case." Rule 26(a)(2)(C) provides that if a witness is not required to provide a written report, the disclosure of that witness must include the subject matter on which the witness will present evidence and a summary of the facts and opinions to which the witness will testify. Treating

3

physicians are generally not subject to the mandatory expert witness disclosure requirements. *St. Vincent v. Werner Enterprises, Inc.*, 267 F.R.D. 344, 345 (D. Mont. 2010). A treating physician is exempt from the Rule 26(a)(2)(B) written report requirements to the extent that his opinions were formed during the course of treatment. *Goodman v. Staples the Office Superstore, LLC.*, 644 F.3d 817, 826 (9th Cir. 2011).

In this case, the treating providers are not subject to the disclosure requirements provided for by Rule 26(a)(2)(B). Though minimal, Plaintiff's written disclosures include the dates of treatment as well as a brief synopsis of the treating providers' anticipated testimony related to their care, treatment, and prognosis of K.R. This meets the minimal requirements of Rule 26(a)(2)(C). *See Melashenko v. Unigard Ins. Co.*, 2017 WL 4781801, at *2 (D. Mont. Oct. 23, 2017). With respect to causation, this Court has found that,

> A treating physician's opinion on matters such as causation, future treatment, extent of disability and the like are part of the ordinary care of a patient. The treating physician may also give an opinion as to the cause of the injury or degree of the injury in the future if the opinion is based on personal knowledge, history, treatment of the patient, and facts of his examination and diagnosis.

*Id.* (internal quotations and citation omitted). "However, an opinion regarding causation may be excluded when there is no evidence in the record suggesting the treating provider considered or determined the cause of the injury." *Id.* (citation

omitted). The party offering the testimony bears the burden of establishing that the treating providers "considered or determined the cause of [her] injuries during the course of treatment." *Mears v. Safeco Ins. Co. of Illinois*, 888 F. Supp. 2d 1048, 1056 (D. Mont. 2012).

    Here, the record and disclosures suggest that the treating providers based their treatment and diagnosis of K.R. in part on the impacts of her father's death. (*See, e.g.*, Doc. 58-3 at 8, 25–26, 49.) For example, Dr. Margaret Siska, M.D., plans to testify about any trauma experienced by K.R., including the death of her father, which she writes has caused K.R.'s medical issues including PTSD, depression, nightmares, and suicidal ideation. (*Id.* at 8.) Similarly, Dr. Steven Bishop, M.D., is expected to offer testimony related to his treatment of K.R. for trauma and the cause of that trauma, including Ross's death, (*Id.* at 25–26) and Tamara Greeling, LCPC, will testify as to the effects of Ross's death on K.R., specifically her grief, trauma, and response to that trauma. (*Id.* at 32). The remaining treatment providers' proffered testimony reflect a similar consideration of K.R.'s treatment and history related to her father's death. There is clearly evidence in the record to suggest the providers "previously considered or determined the cause of [K.R.'s] injuries during the course of treatment." *Melashenko*, 2017 WL 4781801, at *4 (quoting *Mears*, 888 F.Supp.2d at 1056).

5

In the Court's experience, it is neither unusual nor uncommon for physicians and mental health providers to include a discussion of causation in their examination notes or to consider causation as part of their "care, treatment and prognosis." There is thus no basis to preclude the Estate from offering causation opinion testimony at trial from these 53 witnesses under Rule 26 or Rule 37(c)(1). (*See* Doc. 66 at 9) (seeking to preclude testimony based upon Rule 37(c)(1).) Accordingly, for the reasons stated above, this Motion will be denied. The treating providers may offer opinion testimony regarding causation at trial, **provided there is a foundational showing that they developed their causation opinions during the course of treating K.R.**, in which case a Rule 26(a)(2)(B) report is not required.[1]

### II. Plaintiff's Motions in Limine (Doc. 70)

Plaintiff has filed eight Motions in Limine seeking to preclude admission of the following evidence: (1) whether Ross's death was caused by a party not joined

---

[1] Plaintiff raises several additional issues in its response to Defendant's Motion in Limine, (Doc. 68) including whether K.R. can testify to her own mental distress. K.R.'s testimony is not implicated by the present Motion, and the Court finds that she may offer testimony as to her own mental distress. Plaintiff further raises the issue of whether an expert is capable of apportioning K.R.'s emotional distress between the loss of her father and other events in her life; in its reply brief, Gallatin County concedes that it is not suggesting Plaintiff's experts should apportion causation. (*See* Doc. 69 at 2–3.) Thus, this Order does not address the issue of whether a Rule 26(a)(2)(C) expert could offer opinions apportioning causation, assuming such evidence is even admissible.

to this action; (2) whether Ross's death was caused by a party with whom Plaintiff has settled; (3) Ross's prior criminal conduct and incarceration; (4) Ross's prior drug and/or alcohol use; (5) Ross's divorce from Mary Poucher; (6) allegations of domestic violence perpetrated by Ross against Poucher; (7) allegations of abuse or neglect of Poucher's children; and (8) comparative fault as to Plaintiff's 42 U.S.C. § 1983 claim. (*See* Doc. 70.) The Court will address each issue in turn.

### A. Motion in Limine No. 1 – Excluding Evidence that Ross's Death was Caused by a Party not Joined to this Action

Non-party or empty-chair defenses attempt to attribute fault to unnamed third parties and are prohibited under Montana law. *Teague v. Remington Arms Co.*, 2022 WL 16574241, at *6 (D. Mont. Nov. 1, 2022). "Montana law further prohibits a defendant from attempting to apportion fault to the conduct of a non-party. Assignment of liability to a non-party without affording that party the opportunity to defend against liability risks an unreliable and disproportionate assignment of liability, and places the burden of defending the non-party on the plaintiff." *Truman v. Mont. Eleventh Dist. Court*, 68 P.3d 654, 660 (Mont. 2003). "In an action based on negligence, a defendant may assert as a defense that the damages of the claimant were caused in full or in part by a person with whom the claimant has settled or whom the claimant has released from liability." Mont. Code Ann. § 27-1-703(6)(a) (2023). That defense, however, is only allowed against persons who have settled with or been released by the claimant. *Id.* "Except for

7

persons who have settled with or have been released by the claimant, comparison of fault with any of the following is prohibited: (i) a person who is immune from liability to the claimant; (ii) a person who is not subject to the jurisdiction of the court; or (iii) any other person who could have been, but was not, named as a third party." *Id.* § 72-1-703(6)(c).

The Estate seeks to preclude the Defendant from assigning blame for Ross's death to several non-parties, specifically Ross's ex-wife Poucher, Ross's mother who ultimately decided to take him off life support, and the hospital where Ross was treated and died. (Doc. 71 at 5–7.) Because the Defendant has filed neither a third-party complaint nor cross-claim against Poucher, [2] Ross's mother, nor the hospital, it may not assign blame for Ross's death to any of these aforementioned parties. *See* Mont. Code Ann. § 27-7-703(6)(c)(iii).

Accordingly, in consideration of the above, Plaintiff's first Motion in Limine is granted. Defendants may not argue, suggest or present evidence suggesting that Ross's death was caused by Poucher, Ross's mother, or the treating hospital. The Defendant may, however, present relevant fact evidence with respect to the jail-house conversation between Poucher and Ross and the fact that Ross was taken off

---

[2] In its Answer to the Second Amended Complaint, Defendant asserted a Seventeenth Affirmative Defense on this issue. (Doc. 33 at 14.) In that defense, Defendant reserved the right to assert a third-party claim against Poucher, but indicated they would seek leave of court to do so pursuant to Montana Code Annotated § 27-1-703. The Court has received no such request.

8

life support prior to his death, granted that evidence is not used to assign blame for Ross's death to any non-party.

### B. Motion in Limine No. 2 – Prohibiting any Argument that Ross's Death was Caused by a Settled Party

The Estate further seeks to preclude Defendant from assigning blame for Ross's death to a settled party. (Doc. 74 at 7.) Following Plaintiff's filing of its Motions in Limine, the Estate settled its claims against Pipinich and WMMHC, and those parties have been dismissed with prejudice from this matter. (*See* Docs. 72, 75.) In response to Plaintiff's Motions in Limine, Defendant indicated it had not made a decision "about how to move forward" in the event Plaintiff settled with Pipinich and WMMHC. (Doc. 74 at 8.) As of the date of this Order, however, Defendant has not alleged that a settled or released party is at fault, nor have they sought to amend their Answer to Plaintiff's Second Amended Complaint to make any such allegation.

Accordingly, for the reasons stated above, Plaintiff's second Motion in Limine is granted. Defendant may not argue, suggest, or present evidence suggesting that Ross's death was caused by a settled party.

### C. Motions in Limine Nos. 3 and 4 – Exclusion of Ross's Prior Criminal Conduct, Incarcerations, and Prior Drug and/or Alcohol Abuse

Plaintiff next seeks to exclude evidence of Ross's prior criminal conduct, incarcerations, and his prior drug and/or alcohol use. (Doc. 71 at 9–12.) Plaintiff

9

argues this evidence will unfairly prejudice Plaintiff, does not bear any relevance to the claims or defenses in this matter, and should be precluded under Federal Rule of Evidence 404(b). (*Id.*) The Court disagrees.

Rule 404(b) applies in both civil and criminal proceedings, and provides in pertinent part that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." F.R.E. 404(b). Trial courts "should assess [Rule 404(b)] evidence under the usual rules for admissibility." *Huddleston v. United States*, 485 U.S. 681, 688 (1988). "The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403." *Id.* Here, evidence of Ross's prior criminal conduct, incarcerations, and drug and/or alcohol use is relevant to the issues of liability and damages. *See* F.R.E. 401. Though this evidence may not present Ross in the most favorable light, it is not prejudicial to the extent that it overrides the evidence's relevance to issues at trial. Indeed, Plaintiff's own liability expert, A.E. Daniel, M.D., makes repeated references to Ross's criminal history as well as his drug and alcohol use in forming his opinions in this case. (*See* Doc. 58-3 at 55–61.)

As a final matter, Plaintiff seeks bifurcation at trial on the issues of liability and damages. Because the above evidence is relevant to both liability and

damages, this request would have no practical or salutatory effect and would likely cause confusion and inefficiency. The Court therefore will not agree to bifurcation of these issues under any circumstance. Accordingly, Plaintiff's third and fourth Motions in Limine are denied.

### D. Motions in Limine Nos. 5, 6, 7 – Exclusion of Ross's Divorce from Mary Poucher, Allegations of Domestic Violence Perpetrated by Ross against Poucher, and Allegations of Abuse or Neglect of Poucher's Children

Plaintiff further seeks to exclude several pieces of evidence related to Poucher, including her divorce from Ross, allegations that Ross abused Poucher, and evidence of abuse and/or neglect of Poucher's other children. (Doc. 71 at 12–13.) Poucher and Ross were married in 2009 and divorced in 2012. During Poucher's deposition, Poucher testified that Ross was violent towards her during their relationship and was repeatedly asked about allegations that she abused or neglected her four other children. (*Id.* at 12.) Plaintiff argues this evidence should be excluded from introduction at trial because it will unfairly prejudice Plaintiff, and that prejudice would outweigh any probative value. The Court is inclined to agree with Plaintiff regarding the relevancy and prejudicial nature of evidence related to Ross's relationship with Poucher and to Poucher's four other children. However, the undersigned reserves ruling on Plaintiff's fifth, sixth, and seventh Motions in Limine until trial.

11

### E. Motion in Limine 8 – Comparative Fault as to the Estate's Section 1983 Claim

Because the Court has granted summary judgment in Defendant's favor on the Estate's Section 1983 claim, Plaintiff's seventh Motion in Limine will be denied as moot.

### III. Plaintiff's Motion to Strike Defendant's Untimely Amended Liability Expert Disclosure (Doc. 102)

As a final matter, Plaintiff seeks to strike Defendant's Amended Liability Expert Disclosure and to exclude Dr. Sally Ann Cunningham Johnson, M.D. ("Dr. Johnson") as a witness at trial. (Doc. 102 at 1.) Additional background is required here for context. On April 1, 2022, Poucher became Personal Representative of Ross's Estate and filed the original Complaint against Gallatin County. (Doc. 1.) The County filed its Answer on May 16, 2022. (Doc. 3.) Due to several pretrial delays and discovery disputes, the parties have gone through multiple Scheduling Orders and trial dates. On April 14, 2025, in accordance with the most recent Scheduling Order (Doc. 54), Gallatin County and other now-dismissed defendants provided their Liability Expert Disclosure (the "Original Disclosure"). (Doc. 103-1.) The Original Disclosure listed Dennis R. McCave, CJM, as the sole retained expert. (*Id.* at 2.) The Original Disclosure further listed representatives of GCDC, any and all medical providers for Ross, and "Any Other Expert Identified By Any

Other Party" as non-retained fact/hybrid experts. (*Id.* at 2–3.) WMMHC and Pipinich also provided their Expert Witness Disclosure on April 14 and listed Dr. Johnson as a retained expert. (Doc. 103-2 at 2.) As noted above, WMMHC and Pipinich were dismissed from this case on July 11, 2025. (Doc. 75.)

    Plaintiff argues that it first learned of Defendant's intent to call Dr. Johnson in its July 11, 2025, response to Plaintiff's Motions in Limine. (*See* Doc. 74 at 8.) Thereafter, on October 3, 2025, Defendant provided an Amended Expert Witness Disclosure ("Supplemental Disclosure") which revealed Dr. Johnson as a retained expert for Gallatin County and referenced her previously disclosed report in WMMHC and Pipinich's Expert Witness Disclosure. (Doc. 103-3 at 3.) Plaintiff argues that the Defendant failed to show exceptional circumstances warranting its intended use of Dr. Johnson and failed to adhere to the Court's Scheduling Order and the federal rules of discovery when it identified Dr. Johnson as a retained expert on October 3, 2025. (Doc. 102 at 1–2.) Plaintiff seeks to strike this testimony pursuant to Federal Rule of Civil Procedure 12(f). (Doc. 103 at 6.)

    Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Generally, motions to strike should be

13

denied unless the matter has no logical connection to the controversy at issue and may prejudice a party to the suit. *See* Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382 (1990). Granting a motion to strike is within the trial court's sound discretion. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), reversed on other grounds, *Fogerty v. Fantasy Inc.*, 510 U.S. 517, 127 (1994).

    As an initial matter, the Court recognizes that Defendant's expert disclosure is not a pleading and thus is likely not subject to the parameters of Rule 12(f); with that being said, even if the disclosure could be construed as a pleading, Plaintiff fails to make any argument with respect to the disclosure's immateriality, redundancy, impertinency, or scandalous matter. It seems Plaintiff recognizes this, and in the Reply Brief directs this Court to its inherent authority to strike and to Federal Rule of Civil Procedure 37. (Doc. 105 at 2–3.) Rule 37 permits the court to sanction a party who fails to comply with discovery rules by "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence," or "striking pleadings in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(ii–iii).

    The Court will deny Plaintiff's Motion to Strike. First, the disclosure is not untimely. Trial is not set in this matter until February 2026. Plaintiff has been aware of Dr. Johnson's opinions since April 14, 2025, and has been aware of

Defendant's intent to use these opinions since July 11, 2025; this timeline, in the Court's opinion, obviates any prejudice Plaintiff may suffer as a result of the testimony. Indeed, Gallatin County is not seeking to amend Dr. Johnson's opinions and is relying on her original report. And though Dr. Johnson's report is focused primarily on the liability of WMMHC and Pipinich, she does offer several opinions with respect to the liability of Gallatin County. Finally, Plaintiff was plainly put on notice of Defendant's right to call experts identified by other parties in its Original Disclosure. (*See* Doc. 103-3 at 4.) Plaintiff's cited authority does not persuade the Court otherwise.

With that being said, the Court will implement several siderails on Gallatin County's use of Dr. Johnson. These siderails include but are not limited to: (1) precluding cumulative expert testimony on any issue; and (2) precluding any mention, by any party, that WMMHC and Pipinich were previously defendants in this case, that Dr. Johnson was previously retained as an expert by WMMHC and Pipinich, and that WMMHC and Pipinich settled with the Plaintiff. Therefore, the Court will deny Plaintiff's Motion to Strike with these parameters in place.

## Conclusion

Accordingly, for the reasons stated above,

IT IS ORDERED that:

1. Defendant's First Motion in Limine (Doc. 65) is DENIED;

2. Plaintiff's Motions in Limine (Doc. 70) are GRANTED in part and DENIED in part as follows:

    a. Plaintiff's first motion in limine is GRANTED;

    b. Plaintiff's second motion in limine is GRANTED;

    c. Plaintiff's third and fourth motions in limine are DENIED;

    d. The Court reserves ruling on Plaintiff's fifth, sixth, and seventh motions in limine; and

    e. Plaintiff's eighth motion in limine is DENIED as moot;

3. Plaintiff's Motion to Strike (Doc. 102) is DENIED.

    DATED this 6th day of January, 2026.

_____
Dana L. Christensen, District Judge
United States District Court